H. G. BRYAN ET AL., APPELLEES, V. I. A. MANCHESTER, APPELLANT.

FILED FEBRUARY 26, 1924.    No. 22660.

1. Trial: AFFIRMANCE OF VERDICT. A verdict which is not affirmed by the jury in open court is of no force and effect.

2. ———: ———. Under the facts disclosed by the record and set out in the opinion, *held* that the court was open at the time the jury returned its verdict and that the verdict was properly received.

3. ———: DIRECTORY STATUTE: VERDICT. The provisions of section 8806, Comp. St. 1922, that the verdict shall be "read by the clerk to the jury, and the inquiry made whether it is their verdict," and the further provision of section 8807, Comp. St. 1922, that the jury must be conducted into court, and "their names called by the clerk," are directory, and not mandatory.

4. ———: RECEIPT OF VERDICT. Ordinarily it is not error for the court, while in session, to receive a verdict in a civil action, in the absence of the clerk, the parties to the action, and of their counsel.

5. Appeal: IMMATERIAL ERRORS. Under section 8657, Comp. St. 1922, errors which do not affect the substantial rights of the complaining party will not justify a reversal of the judgment.

6. ———: CONFLICTING EVIDENCE. Where questions of fact are determined by the jury upon conflicting testimony, the verdict will not be disturbed on appeal, unless clearly wrong.

APPEAL from the district court for Valley county: EDWIN P. CLEMENTS, JUDGE. *Affirmed.*

*Munn & Norman,* for appellant.

*Davis & Davis, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ., REDICK, District Judge.

DAY, J.

This is an action by ·plaintiffs to recover· damages from the defendant for an alleged breach of contract. ·The trial resulted in a verdict and judgment for the plaintiff for $1,907.31. Defendant appeals.

Defendant relies upon two main grounds of error for a reversal of the judgment: First, that the court erred in receiving the verdict, and ordering it to be filed; and, second, that the verdict is contrary to the weight of evidence. In support of the first proposition, the defendant contends that the court erred in receiving the verdict, because it was not returned in open court. The rule of law is well established that a verdict is of no force and effect unless it be affirmed by the jury in open court. *Young v. Seymour,* 4 Neb. 86; *Longfellow v. State,* 10 Neb. 105.

As bearing upon this phase of the question, the record shows that the trial was concluded and the cause submitted to the jury at 11:45 a. m. of December 15, 1921. The verdict was returned at 10:15 p. m. of the same day. At the time the verdict was received by the court, no one was present in the courtroom except the judge, the jury, and the bailiff. It appears that during the trial the judge announced that the court would remain open until midnight of December· 15, 1921. This announcement by the court was understood by counsel for both sides, as evidenced by their conduct in remaining in and about the courtroom until about 9:30 p. m. waiting for the jury to agree upon a verdict. The law does not require that the court adjourn at any given hour of the day. It was competent for the judge to hold the court open till midnight if he thought proper to do so. In support of their argument that the court was not open when the verdict was received, counsel for the defendant cite *Young v. Seymour,* and *Longfellow v. State, supra.* There is some similarity in the facts in those cases and the case at bar.· But in each of those cases, the pivotal point of the decision was that, after· the jury had retired· for deliberation.· the court adjourned until the following day, and subsequently during the recess received the verdict and

discharged the jury in the absence of the clerk and the parties to the action. In those cases it was held that the verdicts were invalid because not affirmed by the jury in open court. The controlling point was not that the clerk and the parties were not present, but that the court had previously adjourned for that day. The absence of the clerk, or the parties to an action, or of counsel are not necessarily factors in determining whether court is open. The record of the court is the controlling factor in determining whether the court is open. The journal entry, in so far as it applies to the question now under discussion, recites as follows: "At 10:15 p. m. of said day, the said jury returned into open court with their verdict for the plaintiff in the sum of $1,907.31, the clerk of the said court not being then present in open court, the court duly received the said verdict and read the same to the jury, and thereupon asked, 'Gentlemen of the jury, is this your verdict?' Whereupon each and all of the members of the said jury answered, 'Yes.' " This order of the court, together with the announcement by the judge that court would remain open till midnight, clearly show that the court was open when the verdict was received.

It is also contended by defendant's counsel that the verdict was improperly received because of the absence of the clerk. In support of this contention, they cite sections 8806 and 8807, Comp. St. 1922, which, in so far as pertinent to the point urged, are respectively as follows:

"Section 8806. The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagree, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case."

"Section 8807. When the jury have agreed upon their verdict, they must be conducted into court, their names called by the clerk, and the verdict rendered by the foreman. When the verdict is announced, either party may re-

quire the jury to be polled, which is done by the clerk asking each juror if it is his verdict. If any one answer in the negative, the jury must again be sent out for further deliberation."

We are of the view, however, that the provisions of section 8806 that the verdict shall be "read by the clerk to the jury, and the inquiry made whether it is their verdict," and the further provision of section 8807 that the jury must be conducted into court, and "their names called by the clerk," are merely directory, and not mandatory. The functions to be performed by the clerk, as prescribed by the sections of the statute above quoted, are ministerial and can be performed by the judge as well as the clerk. The affidavit of the trial judge states that all the jurors were present when the verdict was returned. The requirements of the statute with respect to receiving the verdict were substantially complied with.

Defendant's counsel also complain because the verdict was received in the absence of the parties to the action, and of counsel. The record shows that defendant's counsel, after waiting some considerable time for the jury to agree upon a verdict, voluntarily left the courtroom, and requested the bailiff to notify them in case the jury arrived at a verdict. This request was not made known to the judge. When the jury agreed upon a verdict about 10 o'clock at night, the bailiff informed the judge, who came to the courtroom and received the verdict. If counsel desired to be present at the time the jury returned its verdict, they should have remained in the courtroom until the jury reported, or have communicated their wish to the trial judge, which undoubtedly would have been respected. Defendant's counsel not having brought this matter to the attention of the judge, we are unable to see that there was error on the part of the court in receiving the verdict in their absence. The law is well settled that the verdict may be received by the court when in session, in the absence of the clerk, the parties to the action, and their counsel.

Defendant's counsel also argue that they were deprived

of the right to poll the jury. The right of a litigant to have the jury polled is one which may be waived, and is waived by the failure to be present when the verdict is returned, or, if present, by failure to request that the jury be polled. If counsel for defendant desired to poll the jury, they should have remained in the courtroom, or have made arrangements with the judge that they be notified and given an opportunity to be present before the verdict was received.

Defendant's counsel have made a showing that they attempted to enter the courthouse at about 9:30 p. m. and found both of the doors to the courthouse locked. It does not appear that they made any other effort to gain entrance. Whatever may have been the condition of the doors with respect to being locked at the time defendant's counsel attempted to gain entrance, at about 9:30 p. m., it clearly appears that, at the time the trial judge entered the courthouse by the west door, he left the door unlocked. It also appears that during the evening, before the verdict was returned, a number of persons passed in and out of the courthouse. The sheriff was present in his office, and by affidavit stated that at about the time the verdict was rendered a number of persons entered the courthouse. It is not claimed by defendant's counsel that they attempted to gain an entrance to the courthouse after about 9:30 p. m. We are satisfied that the courthouse was accessible from the outside at the time the verdict was received.

The several arguments made in support of the defendant's first assignment of error relate to technical questions of practice, and do not appear to involve any of the substantial rights of the defendant. Under section 8657, Comp. St. 1922, errors which do not affect the substantial rights of the complaining party will not justify a reversal of the judgment.

With respect to the contention that the verdict is contrary to the weight of evidence, the record shows that the parties entered into a contract whereby the plaintiffs agree to raise a quality of Flint corn, the seed to be furnished by the defendant. The plaintiffs agreed to deliver the crop to

defendant, who was to pay $1.75 a bushel therefor. It was stipulated that the corn, when delivered, "shall be in a bright well-cured and merchantable condition, the corn to be free from impure, rotten or bad kernels, and all corn to have germinating quality which shall test at least 85 per cent." The principal dispute arose over the germinating quality of the corn. Upon this question the evidence introduced by plaintiffs tended to show that the germinating quality of the samples was largely in excess of the requirements of the contract. One test was made by the seed analyst of the department of agriculture of the state of Nebraska which showed a germinating quality of 100 per cent. Tests made on behalf of the defendant showed the germinating quality to be from 50 to 60 per cent. The question thus presented was purely a question for the jury to determine. It has been repeatedly held that, where questions of fact are determined by the jury upon conflicting testimony, the verdict will not be disturbed on appeal, unless clearly wrong. We cannot say under this evidence that the verdict is clearly wrong.

The judgment of the trial court is

AFFIRMED.