## WATCHTOWER MUT. LIFE INS. CO. v. DAVIS.

No. 13461.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 20, 1936.

Rehearing Denied Dec. 18, 1936.

Guthrie & Guthrie, of Dallas, for plaintiff in error.

Grady Niblo and Austin S. Dodd, both of Dallas, for defendant in error.

SPEER, Justice.

This suit was instituted by Watchtower Life Insurance Company against Ethel

Davis to cancel a policy of insurance of $500 on the life of her deceased husband, George Davis, for reasons fully set out in the petition.

Defendant answered with general denial, special pleas, and by a cross-action against plaintiff for the face of the policy, for statutory penalty, and reasonable attorney's fees; she alleged the death of her husband, George Davis, notice and proof, the refusal by plaintiff of payment, and grounds, if proven, entitling her to penalty and attorney's fees.

The case was tried to a jury in county court at law No. 2 of Dallas county, Tex., and submitted on special issues, all of which were answered favorable to defendant. Judgment was rendered by the court for $896.25, which included the face of the policy of $500, 12 per cent. penalty of $60, attorney's fees of $250, and interest on the $500 since August 1, 1932, at 6 per cent. per annum to the date of the trial, amounting to $86.25. The judgment further provided for interest on the judgment from its date at the rate of 6 per cent. per annum until paid.

Plaintiff timely filed its motion for new trial in which all the matters complained of in this appeal were raised; the motion being overruled, a writ of error was within the statutory time sued out and the appeal perfected to the Dallas Court of Civil Appeals and by order of the Supreme Court transferred to this court for determination.

We shall refer to the parties as plaintiff and defendant as they appeared in the trial court.

The assignments and points presented, briefly stated, are:

1. The court erred in failing to poll the jury, upon plaintiff's request when the verdict was returned.

2. The court erred in permitting counsel for defendant to so frame his questions to witnesses while interrogating them as to reasonable attorney's fees, in a way as to lead the jury to believe that a contingent fee for such services was involved.

3. The court erred in refusing to define the expression "reasonable attorney's fees" in connection with that issue to the jury.

4. The court erred in rendering judgment for interest on the entire amount awarded which included attorney's fees and penalty.

Revised Civil Statutes, art. 2206, provides that either party to a suit may upon request to the court have the jury polled; which is done by reading the verdict aloud and calling separately the name of each juror and asking him if it is his verdict, and if any juror shall answer in the negative, the jury shall be retired for further deliberation.

The matter complained of is brought up by a very definite and complete bill of exception approved by the trial court which shows substantially as follows: That when the verdict of the jury was returned the court read aloud in the presence of the jury the issues submitted and the answers to each and asked the jury as a whole if such was their verdict, and they all answered, "Yes." Whereupon the attorney for plaintiff moved the court that the jury be polled. The court inquired of counsel: "Do you wish to ask them any questions?" to which counsel replied: "No, sir." The court then said: "Well then, I will discharge the jury. You may ask them any questions about the verdict. I will tender the jury to you and you may poll them." Counsel sat down and said nothing. Prior to the discharge of the jury counsel said: "Your Honor, we would like to have you rule on our motion." To which the court replied: "I tender the jury to you. I am satisfied with the verdict. I have nothing more to ask the jury, so will overrule the motion." To which action of the court counsel excepted. The bill of exception further shows the court then and there told the jury they could go home, as it was late in the afternoon, and told them to report to the Central Jury Room at 9 o'clock next morning. The court retained in his possession the cards which were sent up from the Central Jury Room when the jury was first brought in to be impaneled.

The next morning, the court, while still holding the cards bearing the jurors' names, upon opening court, called counsel for both parties into court and ordered the jurors returned from the Central Jury Room; when they were seated in the jury box they were told by the court it was necessary that they be polled, and he then polled each juror in the manner provided by statute. The plaintiff's counsel objected to the polling of the jury at that time, the jury having been discharged, and the representative of plaintiff corporation having left town, and could not then be present, and for the further reason jurors had been discharged from their oath as such and one juror had

talked to counsel for defendant about matters involved in the case.

■ We think the court erred in the matters complained of, which requires a reversal of the case. The court no doubt had the idea that when requested to poll the jury, the tender to plaintiff's counsel that he might do so if he chose, was sufficient, and that counsel's failure constituted a waiver of the request. We do not think it had that effect.

The statute on this subject, effective prior to the codification in 1925 (Rev.St. 1911, art. 1979), provided that the poll of the jury should be taken by the judge or clerk; but this limitation was omitted from the statute as it now reads. We think that if counsel for plaintiff had accepted the invitation of the court to poll the jury, it would have been sufficient; but he was under no obligation to do so, nor did he waive his client's rights in refusing. The jury could have been polled by any one designated by the court for that purpose. But when counsel declined to comply with the court's request, it was the duty of the court to either do it himself or have it done.

■ Prior to the 1925 codification of article 2206, the subject was contained in article 1979, and, as indicative of the time when such poll should be taken, it provided "when" the verdict is announced, either party may require the jury to be polled, etc. In the new article the word "when" is omitted. This would indicate that at least it need not be done "when" the verdict is returned; but we do not consider that such omission would authorize a construction of the article to mean such polling could be done at any time after the request was made, even after the jury had been discharged; but rather that the poll should be taken within a reasonable time after request, but while the jury was still impaneled in the case. This construction of the article is warranted by its concluding clause, where it provides, "If any juror answer in the negative, the jury shall be retired for further deliberation." The record before us shows the jury was as completely discharged from the case by the court as was within his power to discharge them. But that on the next day they were recalled and polled. Suppose, when asked by the court, one of the jurors had said it was not his verdict, could it be said that after having been discharged they could be "retired for further deliberation"? We think not.

It may be contended that by the provisions of Rev.Civ.St. art. 2234, whereby the court is authorized to recall jurors to give testimony in matters of alleged misconduct of the jury, the procedure followed in this case was justified; but as we construe that article, it may not thus be extended. Such jurors are recalled to give testimony just as the testimony of "others in open court." The only reason for the provision that the jurors may be called to testify is that they are perhaps the ones who know most about the subject under investigation.

■ Regardless of the motive that prompts a party to request the polling of the jury, he is entitled to have it done. The trial court has no discretion in granting the request. There is no requirement that a reason for such request shall be given. A party is entitled to know definitely that each juror assents to the verdict as returned. It has been held that "unanimity of the verdict, freely assented to, is the principle involved." Hancock v. Winans, 20 Tex. 320; Leverett v. St. Louis, S. F. & T. R. Co. (Tex.Civ.App.) 266 S.W. 589 (writ of error dismissed); Wells v. Lone Star S. S. Co. (Tex.Civ.App.) 1 S.W.(2d) 925, 927 (writ refused); Boyer v. Maloney, 27 Ohio App. 52, 160 N.E. 740; Lipscomb v. Cox, 195 N.C. 502, 142 S.E. 779.

■ The second assignment of error complains that counsel for defendant, in his effort to prove what would be a reasonable attorney's fee for prosecuting this suit and collecting the claim, purposely and deliberately injected into the inquiry the question of a contingent fee to the end that the jury would have that in mind in arriving at their answer to the issue. We have carefully read the transcribed questions and answers in the statement of facts on this point, and we find nothing to indicate the assignment is well taken. Counsel was examining expert witnesses on the subject and of necessity had to frame his hypothetical questions on the facts developed in case; this seems to have been fairly done. One of the witnesses did ask counsel if the fee was to be considered a contingent one; counsel did not dwell on the inquiry, but replied that can make no difference, that he wanted to know what would be considered a reasonable fee for the services; this was the statutory test, and but for the query of the witness, the

matter of contingent fee might not have been mentioned; counsel could not anticipate that it would be mentioned. No criticism could be offered of plaintiff's counsel going into the circumstances considered by the witness in arriving at his answer. The objection is that defendant's counsel deliberately persisted in a line of improper questions for the purpose of creating the wrong impression on the minds of the jurors. We do not see this in the case. A decision on this point cited by plaintiff we consider announces the correct rule. In the case of Clayton v. Kerbey et al. (Tex. Civ.App.) 226 S.W. 1117, 1118 (writ refused), it was said: "A case will not be reversed because an attorney asks an improper question, unless it be made to appear that he did not do so in good faith, but for the purpose of improperly influencing the jury, and that it was calculated to have that effect." The assignment must be overruled.

The third assignment raises the question of the failure of the court to give in charge to the jury a definition of the expression "reasonable attorney's fees." There was no charge prepared, presented, and requested on the point, but there was an objection to the court's charge because of its absence. There is a recognized conflict in the decisions as to whether such an objection can be raised, absent a presentation with request for giving such an instruction as is desired. Tex.Jur. vol. 41, § 242, p. 1046, and § 249, p. 1059. But the weight of authority we think is to the effect that an objection timely made to the charge because of the absence of an issue or definition is sufficient to entitle a litigant to complain on appeal without the necessity of both objecting and the presentation of a requested charge. Tex.Jur. vol. 41, § 249, pp. 1059, 1060, and cases there cited, including Speer's Special Issues, p. 406, § 288.

The issue in which the expression was used sought by plaintiff to be explained is as follows: "From a preponderance of the evidence, what sum of money, if any, do you find to be a reasonable attorney's fee for the prosecution and collection of the loss sued for herein?"

The statute (Vernon's Ann.Civ.St. art. 2189) upon the point provides that the court shall submit, in connection with special issues, "such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." The expression "reasonable attorney's fee" is not a legal term and requires no definition as required by the statute. It is a plain, unambiguous expression composed of words in common use and of simple meaning. An attempted explanation would tend to complicate the plain import of the three simple words. We hold that no error was committed in denying the request for an explanatory charge.

The fourth and last assignment of error challenges the judgment of the court wherein it provided for interest at 6 per cent. per annum after its rendition until paid. The judgment was for $896.25; this included the $250 awarded as attorney's fees, which item under article 4736, as amended by Acts 1931, c. 91, § 1 (Vernon's Ann.Civ.St. art. 4736), "shall be taxed as a part of the costs in the case."

Since the amendment of article 4736 in 1931, at which time the above-quoted clause was added, it has been held where jurisdiction was involved by the amount in controversy, that the attorney's fees could not be considered, since costs were not considered in jurisdictional limitations. Provident Life & Accident Ins. Co. v. Adams (Tex.Civ.App.) 55 S.W.(2d) 1077; First Texas Prudential Ins. Co. v. Pipes (Tex. Civ.App.) 56 S.W.(2d) 203.

The attorney's fee is no part of the amount in controversy, but becomes, under the provisions of the statute, costs in the case. Interest on costs cannot be charged until they are paid by plaintiff. Hamburger v. Kosminsky (Tex.Civ.App.) 61 S.W. 958.

The assignment last discussed is immaterial, since we are reversing this case on other grounds; we would not reverse the cause on this ground alone, but would reform the judgment in this respect, and affirm it; the same error perhaps will not occur upon another trial.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.