**Ronald SHARP, Relator,**

v.

**Honorable Charles L. REYNOLDS, District Judge, et al., Respondents.**

**No. 7545.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 20, 1965.

Culton, Morgan, Britain & White, Amarillo, for relator.

Paul Spillman, Wellington, for respondents.

PER CURIAM.

This is a mandamus suit in which Ronald Sharp, Relator, seeks to compel Honorable Charles L. Reynolds, District Judge of the 100th District Court of Collingsworth County, to enter judgment for the Relator. The facts in this case are set out in an agreed statement as follows:

"Some three hours after the jury was retired to consider of its verdict, the court received a request from the jury, asking if they could have made available the pertinent testimony concerning the signal lights. The court instructed the jury that if the jury was in dispute regarding some portion of

a witness's testimony and would certify that fact in writing over the signature of the foreman and point out the portion of the testimony in dispute, such portion of the testimony would be read to the jury, but approximately forty-five minutes later the foreman of the jury sent a note to the court stating that the jury was unable to agree on an unanimous verdict.

· "After reading the jury's note to counsel, the court advised counsel that the court proposed to bring the jury into the courtroom, inquire if the jury felt if it were recessed until the following morning a unanimous verdict could be reached after further deliberation, and, if the jury so indicated it might, the jury would be recessed, but if the court was convinced the jury could not reach a unanimous verdict, the court proposed to ask the foreman whether any special issues had been answered and, if so, direct the foreman to sign the verdict, which would be accepted by the court, and the court would enter whatever judgment the verdict would support.

"Whereupon, the counsel for plaintiff stated he felt the jury should be discharged and a mistrial declared, and counsel for defendant stated he could not agree to the court's proposal to accept a partial verdict, because in view of the jury's request for the testimony concerning the signal lights, it was apparent the jury had not answered the special issues pertaining thereto, and such issues were the very crux of the defense. Counsel for defendant asked for time to confer with a third party, which was granted, and after the conference, stated to the court that he could not agree to the court's proposal to accept a partial verdict, but would abide by the ruling of the court. Counsel for the plaintiff then moved the court to discharge the jury and declare a mistrial. Counsel for

the defendant then moved the court to give the jury the 'third degree' instructions and send them back either that night or the following day. The court remarked to the counsel for both parties that since this was their lawsuit, the court would follow their wishes and declare a mistrial if the court was satisfied the jury could not reach a unanimous verdict.

"No protest was made to the court's decision, and thereupon, the jury was returned to the courtroom. The court advised the jury the court had received the note advising the jury was unable to reach a unanimous verdict, and inquired of the foreman if he felt the jury could reach a verdict after further deliberation. The foreman replied, 'No, sir'. The court then asked the foreman if the jury was recessed until the following morning and then reconvened for further deliberation did he feel the jury could reach a unanimous verdict. The foreman again replied, 'No, sir'. The court then asked each of the remaining eleven members of the jury the same question and each replied in the negative. Thereupon the court discharged the jury. At no time did the court inquire as to whether any questions had been answered by the jury as submitted in the form of special issues.

"As the jury was leaving the jury box, the foreman handed the charge of the court to the bailiff, who gave it to the court. After the jury left the courtroom, the court looked at the charge and made known to both counsel that the jury had apparently answered some of the special issues because some answers were written in the blanks following some special issues. These answers indicated the plaintiff was guilty of contributory negligence. Neither the signature of the foreman nor any other member of the jury appears on the instrument.

"The court noted the docket sheet to the effect that the jury was unable to agree on a verdict, the jury was discharged, and a mistrial declared."

After learning some of the questions showed to have been answered that the plaintiff was negligent and was a proximate cause of the accident, the defendant filed his motion for judgment but the motion was denied by the trial court. In connection with his motion for judgment defendant placed one of the jurymen on the witness stand and asked him if it was his testimony that the jury unanimously agreed that the plaintiff failed to keep a proper lookout. The juror answered, "To the best of my knowledge, yes, sir." As to proximate cause the juror was asked, "Do you recall what the unanimous decision of the jury was in response to that question, if any?" The juror answered, "I believe it was answered as, it was."

We do not believe under this record any verdict was ever received. The parties did not agree to accept a partial verdict. The defendant refused to accept a partial verdict. The court asked each of the members of the jury if they felt the jury could reach a unanimous verdict and they all said they could not. Thereupon the court discharged the jury and declared a mistrial. The court noted the docket sheet to the effect that the jury was unable to agree on a verdict and the jury was discharged and a mistrial .declared. The verdict was never signed by the foreman nor any of the jurymen. As the jury was leaving the jury box after they had been discharged, the foreman handed the charge to the court bailiff. The jurymen were not interrogated by the court to determine if the answers given were their verdict. It is stated in Wheeler v. Oxford, Tex.Civ.App., 321 S.W. 2d 188, as follows:

"If this jury had been interrogated about the answers to the special issues and one of their number had dissented, the judge could not have accepted the verdict and rendered a judgment there-

on. It is the right of a party to have the jury interrogated by the court to determine, not whether it was their verdict when they were in the jury room deliberating, but whether it is their verdict and the verdict of all of them when it is published by them in open court. 'Ordinarily a verdict must be affirmed by the jury in open court and their finding is not a verdict until so affirmed.' 89 C.J.S. Trial § 487, p. 144. 'The rule of law is well established that a verdict is of no force and effect unless it is affirmed by the jury in open court.' Bryan v. Manchester, 111 Neb. 748, 197 N.W. 425, 426. The relator relies upon Barker v. Weingarten Riverside Co., Tex.Civ.App., 232 S.W.2d 692, as his principal authority in support of his application for mandamus. The Barker case is clearly distinguishable from the present case in that the facts in the Barker case show that the members of the jury were in complete agreement as to the answers which they had made and so stated to the court in the court room.

"If this court compelled the district judge to enter judgment for the relator upon this 'verdict', it would be depriving the plaintiff of the right to poll the jury. Watchtower Mut. Life Ins. Co. v. Davis, Tex.Civ.App., 99 S.W.2d 693.

"A writ of mandamus will not lie to control judicial or discretionary actions. First National Bank of Rule v. Chapman, Tex.Civ.App., 255 S.W. 887; Houston Fire & Cas. Ins. Co. v. Gerhardt, Tex.Civ.App., 281 S.W.2d 176. It has not been conclusively established that the verdict was unanimously agreed upon by the jury."

See also Lee v. Galbreath, Tex.Civ.App., 234 S.W.2d 91; De Busk v. Cadenhead, Tex.Civ.App., 346 S.W.2d 145 (N.R.E.).

It is stated in State v. Finch, Tex.Civ. App., 349 S.W.2d 780 as follows:

"Rule 294, T.R.C.P., declares that either party shall have the right to

have the jury polled. It prescribes the method for the poll and states the question which the judge must ask. That question is the simple one: 'Is this your verdict?' When the court propounded that question to Mrs. Stannus, she responded that it was her verdict. The question is clear and simple, and is easily understood by any person qualified to serve on a jury. It is capable of an affirmative or negative answer, and that is all the judge needs to determine. Rule 294 does not authorize a poll to determine whether a juror is hesitant or enthusiastic about the verdict. The question seeks to determine whether the verdict is the juror's at the time the court asks the question. Wheeler v. Oxford, Tex. Civ.App., 321 S.W.2d 188; Wells v. Lone Star S. S. Co., Tex.Civ.App., 1 S.W.2d 925; Leverett v. St. Louis, S. F. & T. R. Co., Tex.Civ.App., 266 S.W. 589; 71 A.L.R.2d 643. At that time, and up to the time the court announced that it received the verdict, any juror may withdraw his verdict. Republic Ins. Co. v. Hale, Tex.Com. App., 128 Tex. 616, 99 S.W.2d 989; Lee v. Galbreath, Tex.Civ.App., 234 S.W.2d 91.''

In this case at bar the jury had in open court informed the court they could not agree and so stated that they could not agree and were discharged without the court having received any verdict of any kind or knowing that any of the issues had been answered. Neither the plaintiff nor the defendant requested the court to permit them to ask the jurors any questions but sat silently and permitted the court to discharge the jury. The Relator's application for writ of mandamus is refused.